# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMONT ZAMICHIELI,         )

         )    Civil Action No. 2:17-cv-742

      Plaintiff,      )

         )    United States Magistrate Judge

     v.        )    Cynthia Reed Eddy

         )

         )

PENNSYLVANIA DEPARTMENT OF  )

CORRECTIONS; CHCA WILLIAM  )

NICHOLSON; PA-C NATALIE D.  )

AUSTIN; CRNP LORI RIDINGS; UNIT  )

MANAGER TINA STALEY;  )

MR. SPIKER, Block Counselor; MEDICAL )

DIRECTOR MIKE HICE; C/O LIPTAK,  )

Block Officer; C/O PRICE; CCPM KAREN )

SOKOL, Program Review Committee;  )

MARK DIALESANDRO, DSCS;  )

DAN CARO, Unit Management;  )

SUPERINTENDENT ROBERT GILMORE;)

TRACY SHAWLEY, Grievance  )

Coordinator, Superintendent Assistant; and  )

ROBERT VALLEY,  )

         )

      Defendants.     )

## MEMORANDUM OPINION [1]

This is a civil rights action brought under 42 U.S.C. § 1983 by plaintiff Lamont Zamichieli

against the Pennsylvania Department of Corrections ("PA-DOC"); ten individual PA-DOC

Defendants: William Nicholson, Tina Staley, Mr. Spiker, C/O Liptak, C/O Price, Karen Sokol,

Mark DiAlesandro, Dan Caro, Robert Gilmore and Tracy Shawley; and four individual Medical

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 18, 36, 54, and 56.

Defendants: Natalie D. Austin, PA-C, Lori Ridings, CRNP, Mike Hice, and Robert Valley, M.D. The Defendants are sued in their individual and official capacities.

Mr. Zamichieli claims that while an inmate at the State Correctional Institute at Greene ("SCI-Greene") prison and medical staff violated his rights by failing to timely move him to a lower tier cell to accommodate his seizure condition. On the day he was moving to the lower tier he had a seizure while descending the stairs, fell, and suffered injuries. He also alleges that during the course of his stay at SCI-Greene he was physically assaulted by a prison employee; sexually assaulted by a medical employee; and fabricated misconduct reports were filed against him. He asserts claims of deliberate indifference in violation of his rights under the Eighth Amendment to the United States Constitution; retaliation in violation of his rights under the First Amendment; and violations of both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

Mr. Zamichieli filed a Complaint on July 20, 2017 (ECF No. 9), followed by a Supplement to the Complaint on October 10, 2017 (ECF No. 21). On October 31, 2017, medical employees Natalie D. Austin, Mike Hice, and Lori Ridings filed a motion to dismiss. ECF No. 29. On November 30, 2017, Robert Valley, M.D. filed a motion to dismiss. ECF No. 37. The motions to dismiss were rendered moot when Mr. Zamichieli filed an Amended Complaint on December 5, 2017, which incorporated exhibits attached to his original Complaint. ECF No. 40.

The PA-DOC Defendants filed an Answer to the Amended Complaint (ECF No. 55). Ms. Austin, Mr. Hice, and Ms. Ridings (ECF No. 44) and separately, Robert Valley, M.D. (ECF No. 49) (collectively referred to as the "Medical Defendants") filed separate motions to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below the motions will be granted in part and denied in part.

## I.    Factual Background

Plaintiff Lamont Zamichieli is an inmate who has been housed at various institutions in the Pennsylvania State Correctional system since he was first processed by the PA-DOC on January 29, 2015.  Am. Compl. ¶ 29.  Mr. Zamichieli was transferred to SCI-Greene, where the events relevant to this case occurred, on December 22, 2016.  Am. Compl. ¶ 30.  He is currently housed at SCI-Huntingdon.  Am. Compl. ¶ 97.  The Medical Defendants are Robert Valley, M.D.; Natalie D. Austin, a Physician's Assistant-Certified; Lori Ridings, a Certified Registered Nurse Practitioner; and Mike Hice, an office administrator.  The moving Medical Defendants are employees of Correct Care Solutions, LLC, hired to provide medical care to inmates at SCI-Greene.

### A.  Requests for Lower Tier Housing

At Mr. Zamichieli's prior institution, he had a medical housing recommendation, dated March 15, 2015, for a lower bunk on a lower tier as an accommodation for his seizure disorder and mild scoliosis.  Am. Compl. ¶ 29.  Upon transfer to SCI-Greene he was temporarily housed in the administrative custody unit before being released to a bed in the general population.  Am. Compl. ¶ 30.  When he was released to the general population on December 30, 2016, he was given a lower bunk located on the upper, second tier, not the lower tier.  Am. Compl. ¶ 34.

Mr. Zamichieli began making requests to both prison and medical staff on December 31, 2016, that he needed to be moved to the lower tier in accord with his disability accommodation. Am. Compl. ¶ 46 (and throughout the Amended Complaint).  He was initially told by the Unit Counselor, Mr. Spiker, that medical approval was needed to authorize the move, and that in any event no lower tier, lower bunks were available at the time.  Am. Compl. ¶ 46.

Mr. Zamichieli alleges he made his first request to medical staff for a lower tier housing assignment on January 3, 2017, during a sick call visit with physician assistant Natalie Austin. Am. Compl. ¶ 48.  He asked Ms. Austin to have the medical department notify the Block Officers, Unit Manager, and Unit Counselor that due to Mr. Zamichieli's seizure disorder he requires a lower tier, lower bunk assignment.  Am. Compl. ¶ 48.  Ms. Austin agreed to make the notification, however, Mr. Zamichieli avers that Ms. Austin did not make the notification as the Unit Manager and Unit Counselor denied his request.  Am. Compl. ¶ 48.

Two days later, on January 5, 2017, Mr. Zamichieli attended another sick call with Ms. Austin to address an increase in his seizure medication.  Am. Compl. ¶ 49.  During this visit Ms. Austin said she would notify Defendant Nicholson to request that he verify with the Unit Manager and Unit Counselor for a move to a lower tier.  Am. Compl.  ¶ 49.

On January 11, 2017, Mr. Zamichieli attended a sick call regarding his blood pressure and again requested a lower tier assignment.  Am. Compl. ¶ 50.  At this visit, Ms. Austin noted that Mr. Zamichieli's computer records indicated that he was on medication for seizures, ("Kepra") and that he had an order for lower tier, lower bunk housing, but there was nothing in the record indicating that that he could not use stairs.  Am. Compl. ¶ 50.  She also told Mr. Zamichieli that Mr. Nicholson was aware that he was taking medication for seizures but he did not know about an order for lower tier housing.  Am. Compl. ¶ 50.

During a sick call on January 17, 2017, Ms. Austin told Mr. Zamichieli that she had submitted a request to the central office for reapproval of his accommodation for lower tier housing.  Am. Compl. ¶ 51.  She also said that she would see if Mr. Zamichieli could be moved to the lower tier pending formal approval of his accommodation.  Am. Compl. ¶ 51.  On unspecified

dates thereafter, Mr. Zamichieli alleges that he continued to make requests to Ms. Austin, Ms. Ridings, Mr. Hice, and Dr. Valley to be moved to the lower tier. Am. Compl. ¶ 54.

Mr. Zamichieli alleges that other inmates were accommodated with cell changes based on their disabilities. Am. Compl. ¶ 60. Mr. Zamichieli also alleges that at certain times lower bunks were available on the lower tier during the time he sought a move. Am. Compl. ¶ 40. Mr. Zamichieli further claims that because he was housed on the second tier he was forced to either use the staircase and risk falling, or not use the stairs and lose access to access to medications, appointments, programs, services, meals, church, and other activities. Am. Compl. ¶¶ 55, 60, 63-64.

### B. Move to Lower Tier Housing and Seizure on Stairs

On the morning of February 13, 2017, while in line to receive medication a nurse noticed that Mr. Zamichieli's eyes were dilated and suspected he had just had, or was about to have, a seizure. Am. Compl. ¶ 68. His vital signs indicated that his blood pressure was 162 over 102, and his pulse was 136. Am. Compl. ¶ 68; Progress Notes, Feb. 13, 2017, attached as Ex. M to Am. Compl (ECF No. 40-1). He was referred to Dr. Valley for evaluation. ECF No. 40-1. Dr. Valley noted the vital signs and reported that Mr. Zamichieli had a headache and abdominal pain. Am. Compl. ¶ 68. Dr. Valley sent Mr. Zamichieli for evaluation and treatment to the local hospital, Washington Hospital Greene. Am. Compl. ¶ 68. Progress Notes indicate that Mr. Zamichieli returned to the prison about 4:45 P.M., with improved vital signs. Progress Notes, Feb. 13, 2017, attached as Ex. N to Am. Compl (ECF No. 40-2). He was sent back to general population. Am. Compl. ¶ 68.

Sometime after he returned to general population on February 13, 2017, Mr. Zamichieli went to Mr. Spiker's office. Am. Compl. ¶ 69. Mr. Spiker said Mr. Hice, Ms. Ridings, and Ms. Austin informed him that Mr. Zamichieli had been transported to the hospital. Am. Compl. ¶ 69. Mr. Spiker agreed to move Mr. Zamichieli to a lower tier cell, however it would have to wait until the next day as an appropriate bed was not available at the time. Am. Compl. ¶ 69.

The next morning, February 14, 2017, while descending the staircase to move his property from the second tier to a lower tier cell, Mr. Zamichieli had a seizure and fell down the stairs suffering injuries. Am. Compl. ¶¶ 56, 70-71; *see also* Progress Notes, Apr. 14, 2017, ECF No. 40-3.

### C. Sexual Assault and Retaliation Allegations

During the January 5, 2017 sick call visit, Mr. Zamichieli alleges that Ms. Austin flirted with him in a sexual manner and also asked him about his misconduct history. Am. Compl. ¶ 49. He alleges that Ms. Austin flirtatiously said that now that she had learned his misconduct history she could use that information to fabricate believable misconducts against him. Am. Compl. ¶ 49.

On January 11, 2017, Mr. Zamichieli alleges that Ms. Austin again flirted with him in a sexual manner and performed a sexual act on him without his consent. Am. Compl. ¶ 50. Mr. Zamichieli said he told Mr. Hice about the incident, but Mr. Hice did not believe him and told Mr. Zamichieli that he must be hallucinating. Am. Compl. ¶ 50.

During the January 17, 2017 sick call, Ms. Austin complained to Mr. Zamichieli about him having told Mr. Hice on her, and noted that Mr. Hice did not believe Mr. Zamichieli's allegation. Am. Compl. ¶ 52. Ms. Austin then allegedly threatened Mr. Zamichieli that she would file fabricated misconducts against him unless he allowed her to perform a sexual act on him. Am.

Compl. ¶ 52. Mr. Zamichieli did not consent to the act. Am. Compl. ¶ 52. On February 24, 2017, Ms. Austin again threatened Mr. Zamichieli in an unnamed manner and sexually assaulted him. Am. Compl. ¶¶ 73-74.

Mr. Zamichieli also claims that Mr. Hice, Mr. Nicholson, and Dr. Valley failed to protect him from Ms. Austin's sexual assaults because they knew that he was to be seen by male staff only, supporting the allegation with a handwritten notation on a medical department "Problem List" attached to the Amended Complaint. Am. Compl. ¶ 76; Problem List, Jan. 29, 2015 & Apr. 24, 2017, ECF No. 40-11, at 25. The "Problem List" contains an entry dated April 24, 2017, with the notation "Alleged sexual abuse non penetrative", and at the bottom of the page the notation, "*to be seen by <u>male</u> staff* <u>only</u>". ECF No. 40-11, at 25.

Mr. Zamichieli generally alleges that Ms. Austin and Ms. Ridings filed fabricated misconducts against him in retaliation for Mr. Zamichieli having filed grievances, complaints, and lawsuits. Am. Compl. ¶¶ 84, 104. He specifically alleges that on April 8, 2017, Ms. Ridings filed a fabricated misconduct report against him in retaliation for Mr. Zamichieli not withdrawing a grievance he filed against Ms. Austin. Am. Compl. ¶ 85. He alleges that the retaliatory misconducts eventually led to his transfer to another prison. Am. Compl. ¶¶ 84, 104. Finally, Mr. Zamichieli alleges that Ms. Ridings retaliated against him by turning him away from a sick call visit based on his sick call slip being inappropriately completed and therefore denying him access to medical treatment. Am. Compl. ¶ 85.

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In addition to the complaint, courts "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d*, § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). "When ruling on a defendant's motion to dismiss, the District Court may consider a document explicitly relied upon in the complaint without converting the motion to

dismiss to a summary judgment motion." *In re: Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999).

Importantly, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (*citing Boag v. MacDougall*, 454 U.S. 364 (1982) (*per curiam*)). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted, the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (*citing Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

## III.  Discussion

The Medical Defendants primarily argue that Mr. Zamichieli has failed to allege sufficient facts necessary to establish each of the causes of action in his Amended Complaint. As discussed below, a review of the allegations of the Amended Complaint demonstrate that Mr. Zamichieli has

sufficiently stated an ADA claim against each of the Medical Defendants in their official capacities insofar as Mr. Zamichieli seeks prospective injunctive relief;[2] a claim against each of the Medical Defendants under the Eighth Amendment for deliberate indifference to his serious medical need that he be housed on a lower tier; a claim against Ms. Austin under the Eighth Amendment for sexual assault; a claim against Ms. Ridings and Mr. Hice under the Eighth Amendment for failing to protect Mr. Zamichieli from sexual assault; and claims under the First Amendment for retaliation against Ms. Austin and Ms. Ridings.  He is unable to state a claim of an ADA violation against the Medical Defendants in their individual capacities; a claim under the Rehabilitation Act against the Medical Defendants; and claims under the First Amendment for retaliation against Dr. Valley or Mr. Hice.

A.  **Americans with Disabilities Act and Rehabilitation Act Claims**

The ADA and the Rehabilitation Act are to be interpreted consistently and have the same standard for liability.  *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citing *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995) ("Congress made clear its intention that identical standards were to be applied to both Acts. . . . Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same").

> [Both Acts] prohibit federally funded state programs from discriminating against a disabled individual solely by reason of his or her disability.  Enforcing regulations require public entities to "make reasonable modifications" to their programs and

---

[2]      However, the Court recognizes that this claim may be moot as it not clear that Mr. Zamichieli is seeking prospective injunctive relief and, more importantly, Mr. Zamichieli is no longer incarcerated at SCI-Greene.  The parties are encouraged to address this issue in any motion for summary judgment they may file.

policies in order to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

*Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015).

Title II of the ADA states that

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the Services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Rehabilitation Act, which was enacted prior to the ADA, similarly provides that

[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794(a). "To state a claim under these acts, a plaintiff must show (a) that []he has a disability, (b) that []he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (c) that such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Id.* (citing 29 U.S.C. § 794; 42 U.S.C. § 12132).

## 1. Alleged Disability

Mr. Zamichieli alleges that he has several disabilities: a seizure disorder (epilepsy), tachycardia, hypertension, mild scoliosis, and mental illnesses. *See* Am. Compl. ¶¶ 2, 8. Although he alleges multiple disabilities, his Amended Complaint centers on the relationship between his desire to be housed in a lower tier cell because of his seizure disorder and the risk of falling due to a seizure while descending stairs. Thus, for purposes of his ADA and Rehabilitation Act claims the only plausible relevant disability is his seizure disorder. Mr. Zamichieli has sufficiently alleged

that he has a seizure disorder and that the Medical Defendants were on notice that he had a qualifying disability.

### 2. Exclusion from Services or Denial of Benefits

Mr. Zamichieli alleges that he was excluded from services and denied benefits as a result of not being housed on a lower tier. Because the stairs were the only access to programs, activities, and benefits, Mr. Zamichieli alleges that he was forced to either risk having a seizure while going down the stairs, or not take the stairs, and he alleges that at times he chose not to take the stairs. Therefore, Mr. Zamichieli alleges that he was constructively excluded from participating in services, activities, and programs and denied benefits such as medication, medical services, and meals, by being forced to choose between his safety and his access to programs, activities, and benefits.

### 3. Based on Disability

Mr. Zamichieli has alleged that his exclusion from programs and activities and denial of benefits was based on his seizure disorder disability. He alleges that he repeatedly requested that he be moved to a lower tier on account of his seizures beginning the day after he was moved to the general population; that he was told that a move based on an accommodation required medical approval; and that he was told that no lower bunk, lower tier cell was available during the time he was housed on the second tier. He claims that the Medical Defendants knew that his disability required him to be in a lower bunk on the lower tier, but the Medical Defendants would not move him to such a cell and failed to take appropriate actions in order to facilitate a move to such a cell. Specifically, he alleges that Ms. Austin stated she would take certain actions to assist him in

gaining medical approval for a move to a lower tier, but that she did not follow through or did not follow through properly.

### 4. Analysis

Mr. Zamichieli did in fact use the staircase numerous times to descend to the lower tier to access programs, services, and benefits, including medical treatment, from December 30, 2016 through February 13, 2017. However, he also alleges that when he did use the staircase he was risking his safety and that there were times when he did not use the staircase. While Mr. Zamichieli's allegations lack specificity as to when and how he was constructively denied access to specific programs, meals, medical treatment, and other services, at this stage the Court reads his Amended Complaint to allege that his risk of seizure was such that by not being housed on the lower tier he had to choose between access to programs and services and his safety. *Matthews*, 613 F. App'x at 168-69 (at motion to dismiss stage allegations were sufficient to state claims even though they lacked specificity regarding disability and why and how he was excluded from benefits). Thus, he has asserted basic factual allegations under the ADA and the Rehabilitation Act.

### a. Rehabilitation Act Claims

However, the Rehabilitation Act does not apply to any of the Medical Defendants because they are not public entities that receive "federal financial assistance," as required under the Act. 29 U.S.C. § 794(a). First, the individual Medical Defendants are employed by Correct Care Solutions, LLC, a private corporation, not a public entity for purposes of the Rehabilitation Act. *Matthews*, 613 F. App'x at 170 (quoting *Edison v. Douberly,* 604 F.3d 1307, 1310 (11th Cir. 2010)

("a private corporation is not a public entity merely because it contracts with a public entity to provide some service"). In addition, Mr. Zamichieli's conclusory assertion that the defendants receive federal financial funding is insufficient to establish the cause of action. *See Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 392–93 (W.D. Pa. 2011) ("Because there is nothing in the Amended Complaint which suggests that any of the individual Defendants in this case receive federal financial assistance, they cannot be held liable in their individual capacities under the RA"). "Suits may be brought pursuant to Section 504 against *recipients of federal financial assistance*, but not against individuals." *A.W. v. The Jersey City Public Schools,* 486 F.3d 791, 804 (3d Cir.2007) (emphasis added). Accordingly, the Rehabilitation Act claims against the Medical Defendants will be dismissed.

### b. ADA Claims

As noted, Mr. Zamichieli identifies specific dated sick call visits at which he asked Ms. Austin to assist him in being moved to the lower tier. His allegations regarding requests made to Ms. Ridings, Mr. Hice, and Dr. Valley are less specific, but he has sufficiently supported his claim. He alleges that he notified all Medical Defendants orally and in writing of his request to be moved to the lower tier. Am. Compl. ¶ 42. He alleges that while in the medical unit he spoke to Ms. Austin, Mr. Hice, Ms. Ridings, and Dr. Valley about his request and that each of them had ignored the request and failed to document that Mr. Zamichieli had made the request. Am. Compl. ¶ 42. He alleges that he repeatedly made requests to be moved to the lower tier on account of his seizure disorder to all the Medical Defendants. *See* Am. Compl. ¶ 5-6, 38-39, & 54. Mr. Zamichieli has raised his right to relief above the speculative level. *Twombly*, 550 U.S. 555. From the alleged facts one can reasonably expect that discovery will reveal evidence of the specific dates and times

14

Mr. Zamichieli met with each of the Medical Defendants to inquire about being moved to the lower tier, as well as how each Defendant responded to the request. *Phillips*, 515 F.3d at 234. Accordingly, Mr. Zamichieli has alleged sufficient facts to survive a motion to dismiss his ADA claims against the Medical Defendants. *Matthews*, 613 F. App'x at 169 (inmate's allegation that he shared his concern with prison officials that his cast and crutches exacerbated his difficulty descending stairs was sufficient to survive a motion to dismiss).

The claims are limited however. The "Court of Appeals for the Third Circuit has stated in dicta that individual liability is not available for discrimination claims brought under Title I or Title II of the ADA." *Sadelmyer v. Peltzer*, No. 2:12-CV-1785, 2014 WL 1452124, at *6 (W.D. Pa. Apr. 14, 2014) (citing *Koslow v. Commonwealth of Pa.,* 302 F.3d 161, 178 (3d Cir. 2002) ("there appears to be no individual liability for damages under Title I of the ADA"); and *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir.2002) (suggesting in dicta that "individuals are not liable under Titles I and II of the ADA")). Nonetheless, the *Koslow* Court "has recognized an exception to this general rule to the extent a plaintiff may sue for prospective injunctive relief against state officials acting in their official capacities." *Mayon v. Capozza*, No. 2:14-CV-1203, 2015 WL 4955397, at *6 (W.D. Pa. Aug. 19, 2015) (citing *Koslow,* 302 F.3d at 178). Therefore, the ADA claim against the Medical Defendants may only be pursued against them in their official capacity insofar as Mr. Zamichieli seeks injunctive relief.

Finally, the Medical Defendants argue for dismissal of the ADA claim because they "were not in charge of the structural layout of the prison and were not in a position to alter its structure." Medical Defs. Br. 8 (ECF No. 45). This argument assumes that the Medical Defendants could only discriminate against Mr. Zamichieli if they possessed the power to change the structure of the

layout of the prison or otherwise make cell assignments. However, as explained above, Mr. Zamichieli alleges that the Medical Defendants, and specifically Ms. Austin, played an active role in discriminatorily denying him access to a lower tier cell based on his disability, such as promising to facilitate a medical accommodation but not following through on the promise. In short, he alleges that he was told he needed a medical accommodation before he would be moved to the lower tier and that Ms. Austin unlawfully hampered his efforts to acquire a medical accommodation. It remains to be determined if Mr. Zamichieli will be able to establish that it was the Medical Defendants' conduct that successfully barred him from access to a lower tier cell, rather than the unavailability of an appropriate placement or the conduct of a prison official, but at this stage of the proceedings he has alleged sufficient factual allegations to state a facially plausible claim for relief under the ADA.

### A. Retaliation Claims

Mr. Zamichieli alleges that the Medical Defendants retaliated against him by filing fabricated misconducts and denying him access to medical treatment. He also alleges that the misconduct reports played a role in his ultimate retaliatory transfer. An inmate alleging that he was retaliated against in violation of the Constitution must establish three elements. First, that he engaged in constitutionally protected conduct. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001). Second, that an adverse action was taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333. Finally, an inmate must show a causal link between the exercise of constitutional rights and the adverse action. *Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333.

The Medical Defendants argue that Mr. Zamichieli has failed to state a claim of retaliation. The Court agrees that Mr. Zamichieli's Amended Complaint does not set forth any allegations supporting a claim of retaliation against Mr. Hice or Dr. Valley, and therefore any retaliation claims against Mr. Hice or Dr. Valley will be dismissed. The Court finds, however, that Mr. Zamichieli has set forth sufficient allegations to allow his retaliation claims to proceed against Ms. Austin and Ms. Ridings.

### 1. Constitutionally Protected Conduct

Mr. Zamichieli engaged in the constitutionally protected First Amendment activity of filing grievances. He alleges that Ms. Austin and Ms. Ridings conspired to have Ms. Ridings file a fabricated misconduct report against him in retaliation for not withdrawing a grievance he filed against Ms. Austin. Am. Compl. ¶ 85. Additionally, he alleges that Ms. Ridings retaliated against him by denying him access to medical treatment by turning him away from sick call claiming that his sick call slip was inappropriately completed. Am. Compl. ¶ 85.

### 2. Adverse Action

Mr. Zamichieli alleges that Ms. Ridings, at Ms. Austin's urging, filed a fabricated misconduct against him causing the adverse actions of (i) having false charges lodged against him; (ii) having to undergo disciplinary proceedings and the resulting punishment, which included time in the restricted housing unit; and (iii) being transferred to a different prison as a direct result of the fabricated misconducts. Mr. Zamichieli also alleges that Ms. Ridings retaliated against him by denying him access to medical treatment on March 13 and 14, 2017. Mr. Zamichieli alleges that on March 13 and 14, 2017, Ms. Ridings stamped Mr. Zamichieli's Progress Notes with the statement "Your sick call slip is inappropriately completed. refer to your handbook." Progress

Notes, Mar. 13-14, 2017, Ex. X-10 to Am. Compl. (ECF No. 40-11, at 18). These allegations allege adverse actions sufficient to deter a person of ordinary firmness from exercising his right to file a grievance.

### 3. Causal Link

To meet his burden to show a causal link between the exercise of his constitutional rights and the adverse action he suffered Mr. Zamichieli must demonstrate that his conduct in exercising a constitutional right was a substantial or motivating factor for the adverse action. *Rauser*, 241 F.3d at 333. To establish a causal connection for a prisoner retaliation claim the inmate must prove either an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). Alternatively, the prisoner must show that the trier of fact should infer causation based on the evidence in the record as a whole. *Id.*

Mr. Zamichieli has met his initial burden to establish causation by alleging that he engaged in the protected conduct of filing a grievance followed shortly thereafter by the filing of a fabricated misconduct against him and the refusal of Ms. Ridings to allow Mr. Zamichieli access to medical treatment. *Rauser*, 241 F.3d at 334.

Once the prisoner makes the initial showing, the burden shifts to the prison official to prove that the same decision would have been made "absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials ... who possess the necessary

expertise." *Id.* "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Laurensau v. Pluck*, No. CIV.A. 12-623, 2013 WL 4779010, at *11 (W.D. Pa. Sept. 5, 2013) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996) and *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)).

As noted, Mr. Zamichieli has attached numerous exhibits to his Amended Complaint, including records of his grievances that refer to, and include documentation of, the alleged fabricated misconduct filed against him. A review of these documents indicates that Mr. Zamichieli will have a difficult task to show that the misconduct was issued or his sick call slips were rejected for retaliatory reasons. However, these are questions of fact that cannot be determined at the motion to dismiss stage. While the Court views these retaliation claims with skepticism, at this early stage of the litigation, the allegations of the Amended Complaint are sufficient to survive the motion to dismiss.

### B. Eighth Amendment Claims

Mr. Zamichieli alleges that the Medical Defendants were deliberately indifferent to his serious medical needs by failing to house him on a lower tier and by denying and delaying him access to medical care after his fall on February 14, 2017. Am Compl. ¶ 103 (Count #1) & 106 (Count #6). He alleges that the fall and resulting injuries were a direct result of the Medical Defendants' deliberate indifference as shown by housing him on an upper tier in light of his serious medical need requiring housing on a lower tier. Am. Compl. ¶ 71. He further alleges the Medical Defendants' deliberate indifference continued after he fell by failing to take him to the hospital for evaluation and in not providing complete X-ray imaging to uncover all of his injuries in order to

19

save costs.  Am. Compl. ¶ 72.  He alleges he did not undergo an X-ray of his right wrist until March 29, 2017, which revealed a fracture.  Am. Compl. ¶ 72.

He separately alleges that Ms. Austin violated his Eighth Amendment rights when she sexually assaulted him and caused him to have Herpes Simplex Virus #1 and Hepatitis A, Am. Compl. ¶ 74 & ¶ 103 (Count #3), and that Defendants Hice and Ridings failed to protect him from such sexual assault.

The Medical Defendants argue that Mr. Zamichieli has failed to sufficiently allege facts so as to maintain a claim for deliberate indifference to a serious medical need pursuant to 42 U.S.C § 1983 and the Eighth Amendment.  The Medical Defendants argue that the allegations of the Amended Complaint are conclusory and that Mr. Zamichieli has failed to plead facts demonstrating that any of the Medical Defendants were aware of and disregarded a substantial risk to his health or safety.

The Court finds that Mr. Zamichieli is unable to state claims of deliberate indifference against the Medical Defendants based on failure to provide medical treatment or denial of medical treatment after his fall on February 14, 2017.  However, the allegations of the Amended Complaint are otherwise sufficient at this stage of the proceedings to support a plausible deliberate indifference claim against the Medical Defendants for failure to move him to a lower tier cell, to support a claim that he was sexually assaulted by Ms. Austin, and to support a claim that Defendants Hice and Ridings failed to protect Mr. Zamichieli from such sexual assaults.  Am. Compl. ¶ 74 & ¶ 103 (Count #3).

### 1. Eighth Amendment Deliberate Indifference Standard

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97 (1976). To state a claim, the plaintiff must establish "(1) a subjective showing that 'the defendants were deliberately indifferent to his or her medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 805 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Planter*, 182 F.3d 192, 197 (3d Cir. 1999)).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference to a serious medical need can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). "Mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. *White*, 987 F.2d at 110. "In the Eighth Amendment context, "deliberate indifference" is 'a subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016) (quoting *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (*en banc*)). The United States Court of Appeals for the Third Circuit expanded on the deliberate indifference subjective standard as follows:

A prison official is deliberately indifferent if the official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' *Chavarriaga*, 806 F.3d at 229 (quotation marks omitted). A plaintiff 'may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk.' *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quotation marks omitted). But the plaintiff must show that the officials were 'aware of facts from which the inference could be drawn that a substantial risk of harm exists, and that they also drew the inference.' *Id.* (quotation and alteration marks omitted).

*Parkell*, 833 F.3d at 335.

## 2. Upper Tier Housing

Mr. Zamichieli's Eighth Amendment claims primarily center on his allegation that the Medical Defendants were deliberately indifferent to his serious medical need by housing him on an upper tier.

### a. Serious Medical Need

Initially, the Court notes that Mr. Zamichieli does not claim that the Medical Defendants were deliberately indifferent to his seizure disorder. Indeed, the allegations show that the Medical Defendants were attentive to his seizure disorder, evaluated him on a regular basis, provided medication, and undertook proactive measures by sending him to the local hospital when a nurse recognized on February 13, 2017, that he either just had or was about to have a seizure. However, the Amended Complaint does set forth sufficient facts to show that Mr. Zamichieli has a serious medical need based on his seizure disorder creating a documented vulnerability to serious injury from using stairs.

Mr. Zamichieli alleges that every time he chose to descend the stairs he was taking a serious risk that he may have a seizure, fall, and suffer injuries. Mr. Zamichieli therefore argues that a

restriction that he be housed in a lower bunk on a lower tier necessarily implies that he is at a substantial risk of harm when descending stairs. The allegations support that the Medical Defendants were aware of his seizure disorder and that he had previously been recommended to be housed on the lower tier. Although his medical records from his prior institution do not specifically restrict him from using stairs, a layperson would understand that someone who suffers from a seizure disorder faces a risk of harm that he would be injured if had a seizure while descending a staircase. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (inmate's medical chronology detailing impairments with housing restrictions to lower bunk, no stairs, sufficient to show serious medical need).

### b. Deliberate Indifference

Mr. Zamichieli also sufficiently alleges facts to show that the Medical Defendants were deliberately indifferent to his serious medical need. His primary allegation is that based on his medical need he should never have been housed on an upper tier, should have been moved immediately, and that the Medical Defendants were aware of this need but did not facilitate a timely move. *Akhtar*, 698 F.3d at 1213-14 (inmate showed medical housing restriction to staff, who ignored restrictions and moved inmate to improper housing). His complaint is that even though his housing restriction was documented and despite his repeated requests to be moved, it still took approximately six weeks after he arrived in the general population before he was moved to a lower bunk on the lower tier. As a result, he alleges that he suffered injuries when he fell. At this stage the allegations lean in favor of supporting that Mr. Zamichieli's risk of harm from using a staircase was "longstanding" dating from 2015, was "well-documented [and] expressly noted by prison officials in the past," as shown by the prior records, and therefore the Medical Defendants

must have known about the risk. *Betts*, 621 F.3d at 259. Mr. Zamichieli's allegations state a claim that the Medical Defendants were subjectively aware that he faced a substantial risk of serious harm by using stairs.

It remains to be seen if the Medical Defendants' conduct "was negligence [or] deliberate indifference." *Matthews*, 613 F. App'x at 170. The allegations are that the Medical Defendants exposed Mr. Zamichieli to greater risk of injury by refusing to recommend placement on a lower tier, failing to timely obtain a medical accommodation for him, delaying acquiring a medical accommodation, and otherwise not taking action to allow him to be moved sooner that February 14, 2017. Although it is possible that the Medical Defendant's conduct caused a delay that led to Mr. Zamichieli not being promptly moved and therefore led to his sustaining injuries when he fell, there is no evidence that the Medical Defendants had control over inmate housing assignments. In fact, once medical staff told the Unit Counselor that Mr. Zamichieli had been transported to the hospital with a suspected seizure the Unit Counselor decided to move Mr. Zamichieli to the lower tier the same day. In addition, the fact that Mr. Zamichieli descended the stairs without incident for six weeks prior to his fall, and that he used the stairs on numerous occasions to obtain medical treatment, meals, and participate in other activities, may be relevant at the summary judgment stage, but in order to state a claim to survive a motion to dismiss the Court finds that he has sufficiently alleged an objectively serious medical need based on a seizure disorder with an obvious and persistent vulnerability to falling while descending stairs.

### 3. Medical Access and Treatment

Mr. Zamichieli also alleges that the Medical Defendants were deliberately indifferent to his serious medical needs by denying him access to medical treatment and delaying medical care

after he fell. He complains that he was not taken to the hospital for treatment the day he fell, that his wrist was not X-rayed in a timely manner, and he otherwise did not receive the medical care that he believed was needed.

Initially, there is no credible allegation in the Amended Complaint that he was completely denied medical care. The allegations regarding his medical treatment after he fell are otherwise insufficient to show a deliberate indifference to a serious medical need. The Amended Complaint demonstrates that the Medical Defendants were actively and consistently responding to Mr. Zamichieli's requests for medical treatment throughout his stay at SCI-Greene. After he fell, he was immediately and extensively treated by medical personnel for the injuries he suffered. Medical staff took several X-rays of Mr. Zamichieli after he fell, and eventually took an X-ray of his wrist several weeks later. Mr. Zamichieli's complaint that he was not taken to the hospital on the day he fell down the stairs and that he was not evaluated as thoroughly as he would have preferred, specifically in regard to an X-ray of his wrist, are complaints over the adequacy of his treatment. *See United States ex rel. Walker*, 599 F.2d at 575 n.2. Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). "Again, the contested issue is deliberate indifference — that is, whether 'inadequate care was a result of an error in medical judgment' or 'deliberate, and motivated by non-medical factors.'" *Parkell*, 833 F.3d at 338 (quoting *Durmer*, 991 F.2d at 69). Mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. The Court concludes that the Amended Complaint does not

state a claim of deliberate indifference to a serious medical need by denying or delaying medical treatment after Mr. Zamichieli fell on February 14, 2017.

### 4. **Sexual Assault and Failure to Protect**

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825 (1991). The Eighth Amendment prohibits conditions of confinement that violate "evolving standards of decency" or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Among the guarantees associated with Eighth Amendment protection is the right to "humane conditions of confinement." *Betts v. New Castle Youth Dev. Ctr*., 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 832).

"To prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas v. Vault*, 109 F.3d 1335, 1338 (8th Cir. 1997). Although sexual abuse of a prisoner by a correctional officer serves no legitimate penological purpose, courts of appeals have held that sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation. *See, e.g., Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim. *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012). Rather, physical sexual assault or threats of physical assault is required for the

objective element to be met. *Chambliss v. Jones*, 2015 WL 328064 (M.D. Pa. Jan. 26, 2015).[3]

Here, Plaintiff alleges much more than mere verbal harassment. He alleges that on three separate

occasions Ms. Austin sexually assaulted him. See Am. Compl. at ¶¶ 50, 52, 73, 74. The Court

finds that Mr. Zamichieli has alleged enough to create a plausible Eighth Amendment claim against

Ms. Austin. The Court recognizes that discovery may well reveal that the alleged conduct does

not give rise to an Eighth Amendment claim, but at this early stage of the litigation, the allegations

of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn

in Mr. Zamichieli's favor.

He also alleges that Defendants Hice and Ridings failed to protect him from Ms. Austin's

sexual assaults because they ignored the directive that he should be seen only by male medical

personnel. In support of this allegation, he attaches to the Amended Complaint a DOC form

entitled "Problem List." Am. Compl. ¶ 76; Problem List, Jan. 29, 2015 & Feb. 24, 2017, ECF No.

40-11, at 25. The "Problem List" has two entries: the first is dated 1/29/15, and indicates that

Mr. Zamichieli has "Depression, seizures, HTN, trachycardia" and the second is dated 2/24/17

which states "Alleged sexual abuse non penetrative." At the bottom of the page, is an undated

notation that reads, "*to be seen by <u>male</u> staff* <u>only</u>". ECF No. 40-11, at 25. From the limited

record before the Court it is not known when this specific notation was added to the "Problem

List." Discovery may well reveal that notation was not added until after the alleged sexual assault

---

[3]     Although the Court of Appeals for the Third Circuit "has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate, other federal courts have held that "sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction" as is required to state a claim for a constitutional violation. *Chambliss v. Jones*, 2015 WL 328064, at *3 (M.D.Pa. Jan. 26, 2015) (citations omitted).

occurred in this case and thus neither Ms. Ridings nor Mr. Hice would have known of this restriction, but at this early stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Mr. Zamichieli's favor.

## IV.    Conclusion

For the foregoing reasons the Court finds that the motion to dismiss the Amended Complaint filed by Natalie D. Austin, Mike Hice, and Lori Ridings (ECF No. 44) will be granted in part, and denied in part.  The motion will be denied as to Mr. Zamichieli's ADA claim asserted against the Medical Defendants in their official capacity, his retaliation claims against Ms. Ridings and Ms. Austin, and his deliberate indifference claim based on the Medical Defendants' failure to timely move his housing to the lower tier, his sexual assault claims against Ms. Austin, and his failure to protect claims against Mr. Hice and Ms. Ridings .  The motion will be granted as to all other claims asserted against Ms. Austin, Mr. Hice, and Ms. Ridings.

The motion to dismiss the Amended Complaint filed by Robert Valley (ECF No. 49) likewise will be granted in part and denied in part.  The motion will be denied as to Mr. Zamichieli's ADA claim asserted against Dr. Valley in his official capacity, and his deliberate indifference claim based on the failure to timely move his housing to the lower tier.  The motion will be granted as Mr. Zamichieli's ADA claim asserted against Dr. Valley in his individual capacity, all retaliation claims asserted against Dr. Valley, and his deliberate indifference claims based on failure to provide medical treatment and denial of medical treatment after Mr. Zamichieli's fall on February 14, 2017.

A "district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 236.    Mr. Zamichieli has filed a Complaint, a

Supplement to the Complaint, and an Amended Complaint, all of which rely on numerous attached documents, and is unable to assert factual allegations that would support a claim for relief of any of the dismissed claims. Accordingly, the Court finds that to permit the filing of a second amended complaint would be futile.

In sum, the following claims have survived the Medical Defendants' motions to dismiss:

1. The ADA claims against the Medical Defendants in their official capacities;

2. The First Amendment Retaliation claim against Ms. Austin and Ms. Ridings regarding the issuance of a false misconduct and the First Amendment Retaliation claim against Ms. Ridings for denying Mr. Zamichieli access to medical treatment;

3. The Eighth Amendment claims against all the Medical Defendants for deliberate indifference to his serious medical need in failing to transfer Mr. Zamichieli to a lower tier bunk; the Eighth Amendment claim against Ms. Austin for sexual assault; and the Eighth Amendment claim against Mr. Hice and Ms. Ridings for failure to protect.

An appropriate Order will be entered.


Dated: June 5, 2018

BY THE COURT:


s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge
