**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LAMONT ZAMICHIELI,

        Plaintiff,

v.

PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

) Civil Action No. 2: 17-cv-0742
)
)
) Chief United States Magistrate Judge
) Cynthia Reed Eddy
)
)
)
)

**MEMORANDUM OPINION[1]**

      This is a civil rights action brought under 42 U.S.C. § 1983, the Americans with

Disabilities Act ("ADA"), and the Rehabilitation Act filed by *pro se* Plaintiff Lamont

Zamichieli, a Pennsylvania inmate currently confined at the State Correctional Institution at

Camp Hill. There are currently four motions for summary judgment pending before the Court.

Three of the motions were filed by Defendants: (1) the Commonwealth Defendants, which is

comprised of the Department of Corrections, and the following individuals who were employed

at SCI-Greene during the relevant time period: CHCA William Nicholson, Unit Manager Tina

Staley, Mr. Spiker, CO Liptak, CO Price, CCPM Karen Sokol, DSCS Mark DiAlesandro, Dan

Caro, Superintendent Robert Gilmore, and Tracey Shawley (collectively referred to as the

"Commonwealth Defendants") (ECF No. 101); (2) Dr. Robert Valley, who was employed by the

prison's medical contractor and examined / treated Plaintiff during the relevant time period (ECF

No. 96); and (3) Defendants Natalie D. Austin, PA-C, Lori Ridings, CRNP, and Mike Hice,

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 18, 36, 54, and 56.

medical staff employees of the prison's medical contractor during the relevant time period (collectively referred to as the "Medical Defendants") (ECF No. 122). Plaintiff directly responded to each of these motions and also filed his own motion for summary judgment against all Defendants, (ECF No. 126), to which all Defendants have responded.

In light of the issuance of the recent decision of the Court of Appeals for the Third Circuit in *Furgess v. Pennsylvania Department of Corrections*, --- F.3d --, 2019 WL 3720871 (3d Cir. Aug. 9, 2019), the Court ordered that by September 6, 2019, the parties were submit supplemental briefing addressing the application of that decision, if any, to their pending motions for summary judgment. Defendants have complied with that order (ECF Nos. 156, 157, and 159) and their supplemental briefing has been taken into consideration. At the time of filing this Memorandum Opinion, Plaintiff had not filed a supplemental brief.

The motions are have been fully brief[2] and are ripe for disposition. After careful consideration of the motions, the voluminous material in support and opposition thereto, the memoranda of the parties in support and opposition thereto, the relevant case law, and the record as a whole, the Court will grant each of the Defendants' Motions for Summary Judgment in their entirety and deny Plaintiff's Motion for Summary Judgment in its entirety.

## Background

Plaintiff has had an order for lower tier/ lower bunk since March 21, 2015, as an accommodation for his seizure disorder. On December 22, 2016, Plaintiff was transferred to SCI-Greene, where the events giving rise to this lawsuit occurred.[3] Upon arrival at SCI-Greene, Plaintiff was temporarily housed in the administrative custody unit where he was housed in a

---

[2]     *See* ECF Nos. 97, 98, 99, 102, 103, 104, 123, 124, 125, 127, 128, 129, 131, 132, 133, 134, 135, 136, 137, 139, 140, 141, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, and 153.

[3]     As of June 24, 2019, Plaintiff was transferred to SCI-Camp Hill. (ECF No. 154).

lower tier/ lower bunk. On December 30, 2016, he was released to general population, where he was housed in a lower bunk, upper tier cell. According to Plaintiff, after he was released to general population, he regularly began making requests to both prison and medical staff to be moved to a lower tier cell to accommodate his disability. On the morning of February 13, 2017, while in line to receive medication a nurse noticed that Plaintiff's eyes were dilated and suspected he just had, or was about to have, a seizure. He was referred to Dr. Valley, who sent Plaintiff to Washington Hospital Greene, the local hospital, for evaluation and treatment. Plaintiff returned to SCI-Greene that afternoon and was sent back to general population. Sometime after his return that day, Plaintiff was informed by Defendant Spiker that he would be moved to a lower tier/ lower bunk cell, but the move would have to wait until the next day when an appropriate bed would be available. The next morning, February 14, 2017, he was told to pack his things as he was being moved to a lower tier cell. While descending the staircase to move his property from the second tier to his lower tier cell, he had a seizure and fell down the stairs suffering a number of injuries. Plaintiff claims that his rights under the Eighth Amendment, the ADA, and the Rehabilitation Act were violated when all Defendants were deliberately indifferent to his serious medical needs by failing to timely move him to a lower tier cell to accommodate his seizure condition.

Next, he claims that his constitutional rights under the Eighth Amendment were violated when he was sexually abused by Defendant Nurse Austin, and when Defendants Ridings and Hice failed to protect him from such sexual abuse.[4]

---

[4]     Plaintiff, in his brief in support of summary judgment, asserts that he is entitled to summary judgment against "Defendant Jones" for a sexual assault that allegedly occurred on 3/29/17. There is no Defendant Jones in this action. Although the Amended Complaint has allegations against Jones, see ¶¶ 94 and 95, Jones was not named in the caption of the Amended Complaint, Plaintiff did not have a summons issued against Jones, and Plaintiff never requested

He also claims that he was subjected to a number of retaliatory actions by several defendants, including a retaliatory transfer to SCI-Huntingdon and several false/retaliatory misconducts, which violated his constitutional rights under the First Amendment.

## Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must

_____

that service be attempted upon Jones. Any attempt to name or serve Jones now would be untimely under FRCP 4(m). Plaintiff is not entitled to judgment against an individual who was never properly named as a defendant, never had a summons issued against him, never was served in the action, and did not participate at all in the instant proceedings.

produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se,* the filings are to be construed liberally. Thus, if the Court can reasonably read Plaintiff's pleadings together with his summary judgment submissions to show an entitlement to relief, the Court should do so despite any failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (although a filing prepared by a prisoner may be inartfully drawn, it should be read "with a measure of tolerance"). Nonetheless, at the summary judgment stage of the proceedings, the Court is not required to credit any "bald assertions" or "legal conclusions" that are unaccompanied by evidentiary support. *Jones v. UPS,* 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.,* 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals for the Third Circuit, " ' [c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id.* (quoting *Rains v. Cascade Indus., Inc*., 402 F.2d 241,245 (3d Cir. 1968)). If review of cross-motions reveals no genuine issue of material

fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

## Discussion

Following the Court's ruling on the motions to dismiss, the remaining claims in this case are: (1) ADA and Eighth Amendment claims against all Defendants for delay in approving lower bunk status; (2) Eighth Amendment claims against Defendant Austin for sexual assault and against Hice and Ridings for failing to protect Plaintiff against the sexual assaults; and (3) First Amendment retaliatory claims against the Commonwealth Defendants and Defendants Austin and Ridings. *See* Memorandum Opinion and Order granting in part and denying in part the motions to dismiss. ECF Nos. 62, 63.

Discovery has now closed and the parties have each filed motions for summary judgment. Defendants argue that Plaintiff's claims are deficient on the merits. Additionally, all Defendants argue that Plaintiff failed to properly exhaust his administrative remedies as to his claims regarding the delay in transferring him to a lower tier cell, and the Medical Defendants further argue that Plaintiff did not properly exhaust any of his claims against them, which results in those claims being barred by the mandatory exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). The Court will first turn to Defendants' arguments regarding PLRA exhaustion.

A.     *Claims Not Exhausted Under The PLRA*

As the United States Court of Appeals for the Third Circuit recently stated:

> The PLRA states that '[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a). Exhaustion is considered

6

separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former. *See Jones v. Bock*, 549 U.S. 199, 219-20 (2007). The Supreme Court has held that the PLRA requires what is known as 'proper exhaustion,' meaning that inmates must comply with the rules and procedures of prison administrative systems. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). We have held that these procedural requirements are drawn from the policies of the prison in question rather than from any free-standing federal law. *Spruill [v. Gillis],* 372 F.3d [218,, 231 (3d Cir. 2004)]. Thus, we look to the grievance policy at SCI Graterford to determine whether [Plaintiff] has properly exhausted his remedies as required by the PLRA. *See* Inmate Grievance System -DC-ADM 804, Pa. Dep't of Corr. (May 1, 2015) ("DC-ADM 804"), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inm ate%20Grievances.pdf.

*Shifflett v. Korszniak*, -- F.3d --, 2019 WL 3772104, at *6 (3d Cir. Aug. 12, 2019). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Because "prison grievance procedures supply the yardstick for measuring procedural default," *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004), inmates who fail to fully complete the prison grievance process are barred from subsequently litigating those claims in federal court. *See, e.g., Booth v. Churner,* 206 F.3d 289 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

As recognized by the court in *Shifflett*, DC-ADM 804 governs the grievance and appeals process in Pennsylvania corrections systems. DC-ADM 804 "provides a three-step process, with final review of grievances performed by the Secretary's Office [of Inmate Grievances and Appeals ("SOIGA")]," and "a plaintiff must follow *each* of these steps to exhaust administrative remedies under the PLRA." *Spearman v. Morris*, 643 F. App'x 82, 85 (3d Cir. 2016) (citing *Booth*, 206 F.3d at 299; *Jenkins v. Morton*, 148 F.3d 257, 259 (3d Cir. 1988)) (emphasis in

original).  Against this backdrop, the Court will discuss whether Plaintiff has properly exhausted his administrative remedies as to each of his claims.[5]

1.  _Eighth Amendment, ADA, and Rehabilitation Act - Failure to Timely Move Plaintiff to Lower Tier Status_[6]

All three groups of Defendants argue that Plaintiff failed to exhaust his administrative remedies with regard to his claim about reassignment to a lower tier cell.  Plaintiff contends that he made numerous complaints, both orally and in writing, to the Defendants about his need for a lower tier cell. The summary judgment evidence of record, however, demonstrates that Plaintiff did not file any grievances complaining of his placement on an upper tier during the period of December 30, 2016, through February 13, 2017.  In fact, the parties agree, and the summary judgment record reflects,  that the only grievance filed by Plaintiff regarding his cell placement was filed on February 15, 2017, the day after he was assigned to a lower bunk / lower tier and fell moving to his lower tier cell. _See_ Grievance 6605043, dated 2/15/2017 (ECF No. 104-3). _See also_ Declaration of Carol Scire (Plaintiff "did not file a grievance relating to his cell

---

[5]     The parties have not provided the Court with a copy of the DOC grievance procedure. However, the current inmate grievance system procedure, which became effective on May 1, 2015, and was therefore in effect at the time of the alleged incidents in this case, can be found at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievan ces.pdf.  (last accessed September 9, 2019).

[6]     To the extent that it can be construed that Plaintiff is asserting a claim that the Defendants were deliberately indifferent to his seizure disorder, prior to his fall, such a claim must fail.  The summary judgment record reflects Plaintiff received substantial treatment from the medical staff. Specifically, the Medical Defendants and Dr. Valley were attentive to his seizure disorder, evaluated him on a regular basis, provided medication, and undertook proactive measures by sending him to the local hospital when a nurse recognized on February 13, 2017, that he either just had or was about to have a seizure.   As for any such claims against the Commonwealth Defendants, it is well-settled that a non-medical defendant cannot be considered to be "deliberately indifferent simply because [he/she] failed to respond directly to the medical complaints of a prisoner who has already been treated by the prison doctor." _Durmer v. O'Carroll_, 991 F.2d 64, 69 (3d Cir. 1991). Plaintiff has failed to set forth sufficient facts that the medical treatment he received was inappropriate, let alone that the Commonwealth Defendants were aware of any such inappropriateness, and failed to properly address the situation.

placement on an upper tier" during the time period December 30, 2016 through February 13, 2017.) (ECF No. 104-2); Declaration of Constance Green (Plaintiff "did not file any requests or grievances between 12/30/2016 and 2/14/1017 relating to his cell placement on an upper tier, or any reason.") (ECF No 147-2).

In his deposition, Plaintiff conceded that he had never filed a grievance about his cell placement prior to his fall. *See* Plaintiff's Depo at 39 (ECF No. 125-13).[7] And although Plaintiff testified that he told Defendant Austin that he needed a lower tier cell, the medical record evidence is void of any reference that Plaintiff ever told anyone in the medical department that he needed a lower tier cell. The Verifications of Natalie Austin, Lori Ridings, and Michael Hice, offered in support of the Medical Defendants' motion for summary judgment, all reflect the following:

- At no time, between December 2016 and February 14, 2017, the day Lamont Zamichieli fell, did he ever discuss with the Medical Defendants that he needed or wanted a bottom tier, bottom bunk cell.

- At no time, between December 2016 and February 14, 2017, did the Medical Defendants receive or were made aware of any Inmate Request Forms from Lamont Zamichieli regarding needing or wanting to be on a bottom tier, bottom bunk cell.[8]

- At no time, between December 2016 and February 14, 2017, did the Medical Defendants ever receive a grievance from Lamont Zamichieli

---

[7] "Q: Did you ever file any grievance with anyone? A: I filed request slips, no grievances. Q: Okay. That's all I want to know. A: Request for sick call slips. . . . Q: So there is no grievances before you fell. You didn't file a grievance saying you should be on lower tier? A: No, because I was told to -- to notify these, to exhaust remedies to notify the lowers ups to find out if we can get this resolved before we can move on to a grievance system. And they told me that I must submit an accommodation form, which Natalie Austin agreed to do for me, and to my knowledge she supposedly did, but I don't know." P's Depo. at 38.

[8] "Inmate Request Forms are a means for an inmate to send a question or communicate to a specific provider." Verification of Natalie Austin, ¶ 7 (ECF No. 125-14).

complaining that he needed or wanted a bottom tier, bottom bunk cell.

*See* ECF No. 125-14, 125-15, 125-16.

Dr. Valley produced an Affidavit in which he likewise avers that,

- At no time, between December 2016 and February 14, 2017, did he receive any written or oral communications from Lamont Zamichieli regarding the need for lower tier housing assignment.

- At no time, between December 2016 and February 14, 2017, was Dr. Valley aware of any requests from Lamont Zamichieli regarding the need for a lower tier housing assignment.

*See* ECF No. 98-17.

Plaintiff does not point to any evidence contradicting Defendants' showing that no grievance was filed pertaining to this claim. Accordingly, entry of summary judgment is appropriate on Plaintiff's claims regarding the need for a lower tier housing assignment.

2. *Eighth Amendment - Sexual Assault Claims Against Defendant Natalie Austin*

Plaintiff has made serious allegations against Defendant Austin, contending that on four separate occasions, specifically on January 5, 2017, January 11, 2017, January 17, 2017, and February 24, 2017, he was sexually harassed and/or assaulted by Defendant Austin. The Medical Defendants argue that Plaintiff did not file any grievances that name PA Austin[9] and that "several of the grievances do not show utilization of all three tiers of the administrative process mandated for exhaustion."[10]

---

[9]     This argument seems misplaced as Grievance 667427 names Defendant Austin and complains about the alleged incident which occurred on February 24, 2017.

[10]     While the summary judgment record contains declarations stating that Plaintiff never filed a grievance about his assignment to an upper tier, none of the declarations address whether Plaintiff submitted any grievances regarding sexual abuse, failure to protect, or retaliation. Further, the Court is unable to determined if the summary judgment record contains all the grievances filed by Plaintiff related to the claims in this case.

Plaintiff alleges that on January 5, 2017, during a sick call visit, Defendant Austin flirted with him in a sexual manner and also asked him about his misconduct history. Then, according to Plaintiff, Defendant Austin flirtatiously said that now that she had learned of his misconduct history, she was going to use that information to "fabricate misconducts and use them against [him]." Pl's depo. at 42. Plaintiff testified at his deposition that he never filed a grievance or told anyone about the incidents occurring on January 5, 2017. *Id*. at 44-46.

Plaintiff next alleges that he saw Defendant Austin again on January 11, 2017, during a sick call visit. Plaintiff testified in his deposition that she again flirted with him in a sexual manner and, without his consent, "performed oral sex on me." Pl's Depo at 46 - 61. He testified further that he did not file a grievance about the incident, but that he told Defendant Hice about it and Defendant Hice did not believe him, and told him and he must be hallucinating. *Id*. at 62.

In support of their motion, the Medical Defendants have produced the Declaration of Michael Hice. (ECF No. 125-16). In pertinent part, the Declaration states, as follows:

> 11. At no time did [Plaintiff] ever discuss with me in writing or verbally any allegations of sexual contact, abuse or retaliation.
>
> 13. At no time did Lamont Zamichieli ever meet me outside of the medical treatment room or anywhere else and tell me that he was sexually assaulted or had sexual contact with anyone.
>
> 15. On or about January 11, 2017 Lamont Zamichieli did not verbally or in writing discuss with me having oral sex or any form or (sic) sex with Natalie Austin.

Plaintiff alleges that a third incident with Defendant Austin occurred on January 17, 2017, again during a sick call visit. Plaintiff alleges that Defendant Austin complained to him about him having told Defendant Hice on her and threatened that she would file a fabricated misconduct against him unless he allowed her to perform a sexual act on him. Although he did not consent, according to Plaintiff, Defendant Austin "performed oral sex on me." Pl's Depo. at

66. Plaintiff testified that the sexual assault ended when Defendant Ridings entered the room. *Id*. at 71-72. Plaintiff testified that he told an officer what had happened when he left the medical unit, but he did not tell the Superintendent or the CHCA. *Id*. at 82-83.

Plaintiff alleges a fourth incident occurred with Defendant Austin on February 24, 2017, in the medical unit, when she "sexually abused [him] for the third time." *Id*. at 122. Plaintiff did not tell anyone about this incident until later that evening when he was being processed into the RHU after receiving a misconduct.

Plaintiff does not point to any evidence contradicting Defendants' showing that no grievances were filed pertaining to the events which allegedly occurred on January 5, 2017; January 11, 2017; or January 17, 2017. Accordingly, entry of summary judgment is appropriate on Plaintiff's claims that he was sexually harassed and/or sexually assaulted by Defendant Austin on these three dates.

However, the summary judgment record regarding failure to exhaust the February 24, 2017, incident is not so clear. As will be discussed below, a PREA investigation[11] was conducted after Plaintiff reported that he was physically / sexually assaulted by Defendant Austin. The Court will, therefore, address this Eighth Amendment claim on the merits in the appropriate section below.

3.   *Eighth Amendment - Failure to Protect against Defendants Hice and Ridings*

Plaintiff claims that Defendants Hice and Ridings failed to protect him from Defendant Austin's sexual assaults because they ignored the directive that he should be seen only by male medical staff. In support of his allegation, Plaintiff relies upon a handwritten notation on a DOC medical department form entitled "Problem List." The "Problem List" has two entries: the first

---

[11]   The Prison Rape Elimination Act of 2003 ("PREA") is a federal law enacted to address the problem of sexual assault of prisoners. See 34 U.S.C. §§ 39301-30309 (2012).

is dated January 29, 2015, and indicates that Plaintiff has "Depression, seizures, HTN, tachycardia," and the second is dated February 24, 2017, and indicates that "ALLEGED SEXUAL ABUSE NON PENATRATIVE", and at the bottom of the page is the notation, "*TO BE SEEN BY <u>MALE</u> STAFF <u>ONLY*</u>." (ECF No. 125-1, at p 66) (emphasis in original). The parties debate when this notation was placed in Plaintiff's medical file, but no party has produced any evidence which establishes who or when this entry was made. However, this debate is of no moment, because Plaintiff does not point to any evidence contradicting Defendants' argument that he failed to exhaust this issue. Accordingly, entry of summary judgment is appropriate on Plaintiff's failure to protect claims.

The Court now will address the remaining claims on the merits, as Defendants either do not challenge that Plaintiff failed to properly exhaust these claims or, there is an absence of documentation supporting Defendants' contention that Plaintiff failed to fully exhaust the administrative remedies available to him.

B.    <u>Merit Analysis of Claims Not Challenged under the PLRA</u>

1.    *First Amendment Retaliation Claims*

In order to state a *prima facie* case of First Amendment retaliation, a prisoner / plaintiff must plausibly allege (1) that the conduct which led to the alleged retaliation was constitutionally protected; (2) he suffered an "adverse action" at the hands of prison officials, which requires demonstration that the adverse action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

a.     *Retaliatory Transfer*

Plaintiff contends that the Commonwealth Defendants transferred him from SCI-Greene to SCI-Huntingdon for retaliatory reasons. Plaintiff offers nothing more than his bald unsupported statement that,

> when he got to [SCI-Huntingdon], the officers tell me that I was transferred here for me complaining that for the issues that happened at SCI Greene. That I also trans -- say I was transferred for my own safety and my own protection away from that officer and away from Natalie Austin, the three times she sexually abused me.

Pl's Depo. at 144 (ECF No. 125-13). In rebuttal, the Commonwealth Defendants have produced a DOC document entitled, "Petition System - Permanent Transfer Petition," which reflects that Plaintiff was transferred pursuant to an administrative separation. Specifically, he was separated from Dr. Kelly due to his "unpleasant / inappropriate request slips." (ECF No. 104-5). *See also* Declaration of Tracy Shawley, ¶ 5. (ECF No. 104-4). Plaintiff does not point to any evidence contradicting Defendants' argument on this issue. Based on the uncontroverted summary judgment record, the Court finds that entry of summary judgment is appropriate on Plaintiff's claims of a retaliatory transfer against the Commonwealth Defendants.

b.     *Misconduct Report Issued by Austin*

In general, "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence" because courts afford prison officials "great deference" in the context of prison disciplinary proceedings. *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016) (quoting *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002)). To determine whether the prison officials' discipline of the prisoner was within the bounds of their broad discretion, courts evaluate the "quantum of evidence" of the underlying misconduct charges. *Id.* at 426. Prison officials are entitled to summary judgment for disciplining a prisoner, even if their actions were

motivated by animus, so long as the quantum of evidence shows that the prisoner committed a "clear and overt" violation of prison policy. *Carter*, 292 F.3d at 159. On the other hand, prison officials are not entitled to summary judgment where the prisoner's misconduct was not such a clear and overt violation of prison policy that a reasonable fact finder could conclude that he was not punished in furtherance of a legitimate penological interest but instead for engaging in the protected conduct. *See Watson*, 834 F.3d at 426.

Under this framework, prison officials satisfy "their burden of presenting a 'quantum of evidence' of misconduct" where the misconduct report "include[s] 'a meaningful written statement of the evidence relied on and the reasons for the action taken'." *Willams v. Folino*, 64 F. App'x 144, 148-49 (3d Cir. 2016) (*citing Watson*, 834 F.3d at 426 and *quoting Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).

On February 24, 2017, Defendant Austin issued Plaintiff a misconduct charging him with sexual harassment and indecent exposure. Misconduct B 855484. (ECF No. 125-12 at 8). Defendant Austin's version of the evidence in the misconduct provides the following:

> At 10:00 on 2/24/17 in medical office room #6, I was talking with inmate LW2870, Lamont Zamichieli, about his sick call request. He was sitting across the room and said, "Let me sit closer to you - it's loud in the hallway." I said, "no you're fine there." As he proceeded to tell me about his medical problems, he opened part of his browns (sic) and part of his penis was seen. I said, "Put that away!" He then pulled his long shirt out and covered up the front of his pants. He adjusted his leg to ensure I would notice his penis.

*Id.* Although, as will be discussed below,[12] Plaintiff disputed the veracity of this misconduct and argued at his hearing that the misconduct was "in retaliation due to a grievance I filed on

---

[12] Plaintiff filed both a PREA Complaint alleging that he had been sexually assaulted by Defendant Austin on 2/24/17 and Grievance 667427 contending that on 2/24/17, he experienced an unexceptionally long wait in medical based on Defendant Austin's "retaliation, evil malicious intent, and plan for sexual inappropriate oral favor . . . ." (ECF No. 125-12 at 17).

medical, they know my history, they are making this up" (ECF No. 125-12 at 20), the hearing examiner did not believe Plaintiff's position and instead found that a preponderance of the evidence existed to support the charge of indecent exposure and sanctioned Plaintiff to thirty (30) days in disciplinary custody. (ECF No. 125-12 at 20). The hearing examiner dismissed the sexual harassment charge.

On appeal, the Program Review Committee reviewed the misconduct and the written appeal and found that "no violation of DOC policy or procedure occurred, the sanctions imposed were in accordance with DC ADM 801, and the evidence presented supports the findings of the Hearing Examiner." ECF No. 125-10 (emphasis added).

After reviewing the summary judgment record evidence, the Court concludes that the Medical Defendants have "satisfied their burden of presenting a 'quantum of evidence' of misconduct" because both Defendant Austin and the hearing examiner provided meaningful written statements explaining the evidence they relied on and their reasons for concluding that Plaintiff had exposed himself to Defendant Austin. There can be no doubt that the prison has a legitimate penological interest in punishing this sort of conduct. Therefore, given the quantum of evidence of Plaintiff's misconduct, there is no genuine issue of material fact that the disciplinary action taken was reasonably related to legitimate penological interests. Accordingly, Defendant Austin is entitled to summary judgment on this claim.

c.      *Misconduct Report Issued By Ridings*[13]

On April 3, 2017, Defendant Ridings issued Plaintiff a misconduct charging him with (1) threatening an employee or their family with bodily harm, (2) sexual harassment; (3) indecent exposure; and (4) refusing to obey an order.   Misconduct B 747602. (ECF No. 125, Exh. H). Defendant Ridings' version of the evidence in the misconduct provides the following:

> During sick call visit to cell, I was explaining inmate's condition.  He asked if he could still do push ups.  Then he stated "it feels better when I do push ups" then moved his hand and I saw that he was masturbating.  He informed me that "you're going to get this."  I told him to stop and I then terminated the visit.

*Id.* Plaintiff disputed the veracity of this misconduct report contending that the misconduct was in "retaliation for a PREA complaint that I filed against Natalie Austin."  *Id*.  After hearing testimony from both Plaintiff and Defendant Ridings, the hearing examiner did not believe Plaintiff's position and instead found that a preponderance of the evidence, video, and CRNP Ridings testimony existed to find Plaintiff guilty on all four charges  *Id*.   Plaintiff was sanctioned to ninety (90) days in disciplinary custody.  *Id.*

Again, after reviewing the summary judgment record evidence, the Court concludes that the Medical Defendants have "satisfied their burden of presenting a 'quantum of evidence' of misconduct" because both Defendant Ridings and the hearing examiner provided meaningful written statements explaining the evidence they relied on and their reasons for concluding that Plaintiff had exposed himself to Defendant Ridings.   Given the quantum of evidence of Plaintiff's misconduct, there is no genuine issue of material fact that the disciplinary action taken

---

[13]      The summary judgment record evidence reflects that on the same day that Plaintiff was issued this misconduct, he filed Grievance No. 671774, contending that the misconduct was issued in retaliation and harassment by Defendant Ridings.   The summary judgment record reflects that the grievance was denied on initial review, and the denial was upheld by the Superintendent.  (ECF No. 125-7).

was reasonably related to legitimate penological interests. Accordingly, Defendant Ridings is entitled to summary judgment on this claim.[14]

      2.    *Eighth Amendment Sexual Assault Claim Against Defendant Austin*

Plaintiff alleges that he was sexually assaulted by Defendant Austin for a third time on February 24, 2017. The Medical Defendants present a far different version of events. As discussed, above, on February 24, 2017, Defendant Austin filed a misconduct report against Plaintiff for an incident which occurred during sick call at 10:00 am. Immediately after Defendant Austin terminated the medical appointment, she notified the Control Bubble and Shift Commander of the incident and Plaintiff was taken to the RHU. (ECF No. 125-12). The "Immediate Action Taken and Reason" section of the misconduct report indicates that Zamichieli was "placed PHC due to nature of infraction & past infractions (multiple) of similar nature until seen by H/E." *Id*. at 27.[15] The chain of events which occurred next, are detailed in the Sexual Abuse Investigative Summary:[16]

---

[14]    Further, to the extent that Plaintiff is claiming that Defendant Ridings retaliated against him on 3/13/17 and again on 3/14/17 by denying or delaying him access to pain medications or that Defendant Ridings charged him "malicious co-pays," such claims will be summarily dismissed as Plaintiff as has failed to provide any factual support for these claims other than his own bald unsupported statements.

[15]    The Medical Defendants argue that Plaintiff has claimed that he was sexually assaulted by female prison staff members in every prison he has been housed in. In addition to the instant case, Defendants identify two cases pending in the United States District Court for the Middle District of Pennsylvania where Plaintiff claims he was sexually assaulted by at least one prison staff member. *See Zamichieli v. Ficks*, USDC, M.D. Pa, 3:18-cv-0850, and *Zamichieli v. PA Mecheni*, USDC, M.D. Pa, 3: 17-cv-1898. Additionally, on May 9, 2019, Plaintiff was sentenced to a term of imprisonment of 27 - 84 months after being found guilty of two counts of aggravated harassment by prisoner; one count of indecent assault without consent; and one count of harassment - lewd, threatening language. *See* Docket Number: CP-31-CR-0000418-2017, Court of Common Pleas of Huntingdon County, available at https://ujsportal.pacourts.us/DocketSheets/CP.aspx#. (last accessed September 9, 2019).

[16]    The Court notes that the document submitted to the Court is severely redacted with multiple sections and pages "blacked out."

[D]uring in-processing into the RHU, Inmate Zamichieli reported to Lt. Gribble that he was physically/sexually assaulted 6 months ago[17] and did not report it. After the in-processing, Shift Commander Capt. Crumb had Lt. Harvilla conduct an initial interview with Inmate Zamichieli. Inmate Zamichieli reported during this interview that while being examined by PA Austin, PA Austin [sexually assaulted him].[18]

On 27 Feb. 2017, Inmate Zamichieli submitted a Request to Lt. Howells asking to withdraw his PREA complaint stating he does not want to be labeled a snitch or a target. Inmate Zamichieli still reports in this Request that PA Austin is suspicious of inappropriate sexual activity with Inmates during Sick Call procedures.

On 1 Mar. 2017, Inmate Zamichieli was interviewed and provided a written statement. Inmate Zamichieli reports he would like to withdraw his PREA compliant against PA Austin with no further concerns or questions and does not want any problems. Inmate Zamichieli refused PSP involvement, signed for outside support services, and refused to answer any further questions.

On 2 Mar. 2017, Inmate Zamichieli filed Grievance #667427 reporting on 24 Feb. 2017, he was retaliated by having to wait and be seen last for Sick Call because of filing Grievance #665043, and that PA wore a dress that day as he had requested her to wear and he had promised to provide her oral favor. Once in with PA Austin, Inmate Zamichieli only wanted examined for his kidney issue from a fall on 14 Feb. 2017, but PA Austin pulled up her dress, touched him inappropriately during the exam, instructed him to urinate and ejaculate in a cup then received a misconduct with fabricated charges.

Also alleged in the grievance is that PA Austin accepted letters and poems from him in Jan. 2017. . . .

Sexual Abuse Investigative Summary (ECF No. 125-12 at 3-4). Plaintiff testified in his

deposition that the investigation concluded that his charges were "unsubstantiated." Pl's Depo.

---

[17]     Because of this allegation, SCI-Greene set a PREA notification to SCI-Rockview, where Plaintiff had been previously housed. (ECF No. 125-12 at 14).

[18]     After reporting that he was sexually assaulted by Defendant Austin, Plaintiff was brought to the medical unit and examined by Dr. Valley who found no injuries and recommended follow-up with Psych Services. (*Id*. at 10). Per PREA instruction, Lt. Harvilla, C/O Collins, and RN Pokel conducted the evidence collection process. Plaintiff was then transported to the local hospital for further rape assessment as per PREA instruction. (*Id*. at 12). Plaintiff testified that he was served with the misconduct report when he returned from the hospital.

at 150.  In other words, the evidence presented was found to be insufficient to establish that the abuse occurred.

Although the allegations of the purported conduct are troubling, after careful consideration of the record before it, the Court finds that there is simply no credible evidence to indicate that Plaintiff suffered any sexual assault from Defendant Austin on February 24, 2017. Plaintiff did not indicate that sexual contact had occurred when he left the medical unit; and in fact, he only reported a sexual assault during RHU processing - and then he changed his story. Plaintiff's initial statement of any sexual assault occurred while he was being processed into the RHU when he replied in the affirmative to a question about whether he had been assaulted physically or sexually.  At that time, he reported that he had been both physically and sexually assaulted six months ago, but had not reported it to anyone.  The intake officer treated Zamichieli's statements as a PREA complaint and another officer was called in to interview him about this allegation.  It was at that time that Zamichieli changed his story and reported that he had been sexually assault by Defendant Austin on February 24, 2017.  Thereafter, Plaintiff twice attempted to withdraw his PREA charge against Defendant Austin and when that was not possible, he refused to cooperate in the PREA investigation.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. The Court finds that the evidence produced by Plaintiff in opposition to the pending Motion for Summary Judgment fails to present a genuine issue for trial.  The Medical Defendants' Motion for Summary Judgment will be granted on this claim.

## Conclusion

For all these reasons, the Court concludes there is no genuine dispute of material fact with any of the allegations raised by Plaintiff. Therefore, Defendants are entitled to judgment as a matter of law. The Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's motion for summary judgment. will be granted. An appropriate order follows.

Dated: September 9, 2019

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:    LAMONT ZAMICHIELI
       LW2870
       SCI CAMP HILL
       P.O. BOX 200
       CAMP HILL, PA 17001
       (via U.S. First Class Mail)

       All Counsel of Record
       (via ECF electronic notification)